## Luis Mendez *v*. Kenneth Dorman

King, C. J., Murphy, Shea, Alcorn and Comley, Js.

Argued October 2—decided November 7, 1963

*Paul L. Blawie,* with whom were *Anthony T. Varone* and, on the brief, *Alfred R. Belinkie,* for the appellant (plaintiff).

*Paul V. McNamara,* with whom were *Donald I. St. John* and, on the brief, *Raymond J. Doyle, Jr.,* for the appellee (defendant).

KING, C. J.  At about nine o'clock on the morning of Monday, September 23, 1957, the plaintiff, a boy of sixteen, was riding as a passenger on the back of a bicycle operated by another boy in a westerly direction along Boston Avenue, in Bridgeport. The defendant was operating a tractor-trailer truck, also in a westerly direction, along the same street. A dump truck was parked, also headed west, at the northerly curb of Boston Avenue. The day was clear and the pavement was dry. When the bicycle was approximately alongside the parked dump truck, the right rear wheel of the defendant's trailer collided with the bicycle. This action was brought to recover damages for personal injuries sustained by the plaintiff as a result of the collision. From a verdict for the defendant rendered October 9, 1962, the plaintiff appealed.

The sole assignment of error attacks a ruling on evidence, which in turn calls in question the proper interpretation and application of § 52-178 of the General Statutes, as amended in 1959 and 1961.[1]

[1] "Sec. 52-178 [as amended in 1959 and 1961]. ADVERSE PARTY OR OFFICER THEREOF MAY BE COMPELLED TO TESTIFY.  Any party to a civil action or probate proceeding may compel any adverse

The plaintiff, after laying in evidence a map, a hospital record and certain photographs of the locus, called the defendant as his first witness, under the provisions of the quoted statute.

In response to the plaintiff's questions, the defendant testified that he lived in Youngstown, Ohio; that at six o'clock on Sunday morning, September 22, 1957, he left Youngstown, operating the tractor-trailer truck with a cargo bound for New Haven, Connecticut; that his route was through Ridgefield, New Jersey, where he took a layover break; that from there he had driven to New Haven, whence he left for Bridgeport about 8:30 on the morning of the accident; that he had been alone throughout the journey from Youngstown and that the total elapsed time between the start of the trip in Youngstown and the time of the accident in Bridgeport had been about twenty-seven hours.

At this point, the plaintiff asked the defendant whether, except for the layover in Ridgefield, he had been driving continuously during the elapsed time. The defendant objected on the ground that the question went beyond the allegations of the complaint in that the specifications of negligence alleged noth-

party, any person for whose benefit such action or proceeding is instituted, prosecuted or defended, or any officer, director or managing agent of a public or private corporation, partnership or association which is an adverse party or for whose benefit such action or proceeding is instituted or prosecuted or defended, to testify as a witness in his behalf, in the same manner and subject to the same rules as other witnesses, and he may take the deposition of such party or person in the same manner and subject to the same rules as those pertaining to the taking of other depositions; and, in either case, he may examine such party to the same extent as an adverse witness."

Public Acts 1961, No. 177, changed the statute to its quoted form but did not amend it in a manner material to the disposition of this appeal, which is largely concerned with the effect of the 1959 amendment. Public Acts 1959, No. 444.

ing about lack of sleep or fatigue. No evidence had then been elicited as to how the accident happened, and, except for the exhibits hereinbefore mentioned, the evidence had covered only the testimony of the defendant, hereinbefore outlined, as to his residence and the timing and route of his trip from Youngstown.

The plaintiff's claims for the admissibility of the question were confined to two grounds. The first ground was that the evidence was relevant under the final specification of negligence in the complaint, which charged negligence "in that under all the circumstances then and there prevailing, the defendant failed to act in a reasonable and prudent manner."

Although this final specification, in the absence of any motion for a more specific statement, covered a wide field, it is equally clear that it was wholly inadequate to warrant a recovery based on negligence in the operation of a vehicle by one lacking sufficient sleep or suffering from undue fatigue. Neither the operation of the tractor-trailer truck the day before, nor where, to what extent and how long, the defendant had rested during the Ridgefield layover, had anything to do with the "circumstances then and there [Monday morning in Bridgeport] prevailing". Especially on the then state of the evidence, the plaintiff's claim of relevancy was without merit.

We turn now to the second ground of claimed admissibility, which was that the court, in excluding the question, improperly limited the scope of the statutory examination. Prior to the original enactment of what is now § 52-178, a party could not be compelled by his opponent to testify. The statute removed this privilege and placed the adverse party in the same position as any other witness. *Banks*

v. *Connecticut Ry. & Lighting Co.*, 79 Conn. 116, 117, 64 A. 14. Under the statute as it stood prior to the amendment of 1959, the right to cross-examine a party's own witness, whether or not an adverse party, rested in the sound discretion of the court and largely turned on the question of hostility, surprise or deceit. *Sandora* v. *Times Co.*, 113 Conn. 574, 585, 155 A. 819; *Gondek* v. *Pliska*, 135 Conn. 610, 616, 67 A.2d 552. If the witness was the sole source of proof of a fact essential to the examining party's case, somewhat greater liberality in cross-examination would ordinarily be allowed. See cases such as *Stratford* v. *Sanford*, 9 Conn. 275, 284; *Carney* v. *Hennessey*, 77 Conn. 577, 586, 60 A. 129; *Marshall* v. *Fenton*, 107 Conn. 728, 733, 142 A. 403. There was, however, no absolute right to cross-examine merely because the witness was an adverse party and had been called by the opposing party. Actually, the rule seldom, if ever, could work any hardship, since there would be little, if any, occasion to ask leading questions or to attack the credibility of a witness, even though he was the adverse party, unless his testimony had in fact been hostile, deceitful, or so contradictory as to take the examiner by surprise.

The General Assembly, however, by the 1959 amendment; Public Acts 1959, No. 444; added to the statute the phrase stating that a party "may examine such [adverse] party to the same extent as an adverse witness". We agree with the plaintiff that the quoted language used the term "adverse witness" as inclusive of the concept of hostile witness and also gave a statutory right of examination of the adverse party as a witness amounting to a cross-examination which, previous to the 1959 amendment, had ordinarily been permitted only in

the case of a witness whom the court had found to be hostile or to have so testified as to have worked a surprise or deceit on the examining party.

On a statutory examination, leading questions, as defined in cases such as *Hulk* v. *Aishberg,* 126 Conn. 360, 363, 11 A.2d 380, may be asked, although they are ordinarily not permitted on a direct examination. *Stratford* v. *Sanford,* supra; *Fox* v. *Schaeffer,* 131 Conn. 439, 447, 41 A.2d 46. There is no claim that the examination in the form of cross-examination, including leading questions, was not permitted in this case. Rather, the plaintiff complains of the limitation placed on the scope of the examination, a limitation which he claims was erroneous in that the question excluded should have been allowed as cross-examination under the statute.

In Connecticut, the rule governing the scope of an ordinary cross-examination, apart from the statute, is the American rule, that is, that insofar as the cross-examination does not take the form of an attack on the credibility of the witness, it must be limited to the subject matter of the direct examination. *Lancaster* v. *Bank of New York,* 147 Conn. 566, 571, 164 A.2d 392; *Finch* v. *Weiner,* 109 Conn. 616, 619, 145 A. 31. In the instant case, however, the witness was called pursuant to the provisions of the statute, and no other evidence of any consequence had then been adduced. There was no direct examination in the usual sense of the word, by which to measure the permissible scope of the statutory examination which took the form of a cross-examination. Necessarily some other test must be used. The proper test in the situation here is that the statutory examination must be confined within the issues relevant to the case, as made by the pleadings. See *Bates* v. *Flath,* 81 Ohio App. 188,

189, 78 N.E.2d 56; note, 35 A.L.R.2d 756, 757. If we apply this test, it is clear that the question was properly excluded, for the reasons already given.

It is true that the cross-examination of a witness, insofar as it constitutes an attack on his credibility, need not be limited to questions relevant to his direct testimony, nor, in this case involving a statutory examination amounting to a cross-examination, need it, in all types of interrogation, be limited to the issues of the case as made by the pleadings. There was nothing to indicate, however, that the question excluded was, or reasonably could be, incidental to any attack on the credibility of the witness. It therefore could not properly have been admitted on that ground.

There is no error.

In this opinion the other judges concurred.