JOSEPH A. BECKMAN ET AL. *v.* JALICH HOMES, INC., ET AL.
(10807)

PETERS, HEALEY, PARSKEY, GRILLO and BIELUCH, Js.

300

Argued March 31—decision released June 7, 1983

*Anthony F. Slez, Jr.,* with whom, on the brief, was *Michael P. Lincoln,* for the appellants (plaintiffs).

*Richard P. Weinstein,* for the appellees (defendants).

PARSKEY, J. This case arises out of a contract for the construction and sale of a single family residence in Willington. In November, 1978, the plaintiffs brought an action against Jalich Homes, Inc. (corporation) and its president, J. Lindy Childress (Childress), individually and as a duly authorized agent of the corporation. The action was brought in four counts, two for breach of contract, and two for breach of warranty, express and implied.

On June 9, 1980, upon the plaintiffs' motion, the court entered an order of default against the defendants for failure to answer the plaintiffs' request for disclosure and production. Subsequently, on June 17, 1980, the court, on its own motion, vacated this order upon discovering that the action had been dismissed on June 3, 1980, for failure of the plaintiffs to prosecute the action with reasonable diligence. Practice Book § 251.

The case, after having been restored to the docket, was granted a final continuance to March 17, 1981. On that day the trial judge's illness forced a postponement. The court, *Kelly, J.,* advised both counsel that the case would go forward on March 24, 1981, without excuse from either side. On March 23, 1981, the plaintiffs requested permission to amend their complaint by adding counts alleging fraud, products liability and negligence. The trial court denied permission to amend and proceeded to trial, after which the court rendered judgment for the plaintiffs against the corporation only for $4318 damages and in favor of Childress, from which the plaintiffs have appealed.

## I

We first consider the procedural matters. In their preliminary statement of issues the plaintiffs claim that the trial court erred in refusing to reinstate the default which the plaintiffs claim the court had earlier erroneously vacated. This claim is without merit. On June 3, 1980, the court rendered a judgment of dismissal. This was a final judgment terminating the rights of the parties to proceed with the action. *Snow* v. *Calise,* 174 Conn. 567, 570, 392 A.2d 440 (1978). The effect of this judgment was to deprive the court of jurisdiction over the parties. *Lake Garda Co.* v. *Lake Garda Improvement Assn.,* 156 Conn. 61, 65, 238 A.2d 393 (1968). After the dismissal, the case remained in court but could not proceed further except by consent of the parties or by a waiver, express or implied, of any claim of lack of jurisdiction. Id. The order of default of June 9, 1980, having been entered without jurisdiction, the court, upon ascertaining this, had no alternative but to vacate it. After the case was restored to the docket, the plaintiffs filed another motion for default followed by a motion for judgment and a hearing in damages. The trial court, noting that the file was replete with motions, that both parties at one time or another failed to meet the requirements of the rules in pleading and proceeding to trial, and that the parties should proceed to trial, quite properly refused to reinstate the earlier order of default.

The plaintiffs assign error in the court's refusal to permit them to amend their pleadings. While our courts have been liberal in permitting amendments; *Johnson* v. *Toscano,* 144 Conn. 582, 587, 136 A.2d 341 (1957); this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay,

fairness to the opposing parties and the negligence, if any, of the party offering the amendment. *Cummings v. General Motors Corporation,* 146 Conn. 443, 449–50, 151 A.2d 884 (1959). The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. *Freccia* v. *Martin,* 163 Conn. 160, 164, 302 A.2d 280 (1972).

The present case was the oldest nonjury civil case on the court's docket. The motion to amend was filed the day before the case was scheduled for trial. The proposed amendment added counts containing three new theories of legal liability. Counsel for the plaintiffs had decided to amend the complaint about five weeks before the date of trial, but had felt it unnecessary to notify either the court or opposing counsel of this specific intention. At the hearing on the motion counsel for the plaintiffs acknowledged that if his proposed amendment were allowed the case could not go forward at that time. In these circumstances the court's refusal to permit the amendment on the eve of trial was a proper exercise of its discretion and cannot be disturbed. *Lawson* v. *Godfried,* 181 Conn. 214, 216, 435 A.2d 15 (1980).

## II

The plaintiffs challenge the trial court's failure to render judgment in their favor against Childress individually. The plaintiffs claim that they established the individual liability of Childress as a partner of the corporation, on the basis of estoppel, and as a vendor within the meaning of General Statutes §§ 47-116 and 47-121. We consider these claims within the framework of the following facts which are not subject to material

correction.[1] The plaintiffs sold their Enfield home in the early summer of 1977. They were put in touch with Childress by their real estate agent sometime in August, 1977. The plaintiffs were advised by their agent before meeting Childress that he was incorporated as Jalich Homes, Inc. The plaintiffs and Childress examined several houses built either by Childress or the corporation. Childress took the plaintiffs to Lot #1, Village Hill Road, Willington, a two-acre lot with foundation footings poured.

After their first meeting the plaintiffs never again saw or talked to Childress before signing the purchase agreement for the Village Hill Road property. The purchase agreement, which was signed by the plaintiffs, was drawn up and prepared by their realtor, Forsman Realty. On the agreement Jalich Homes, Inc., was designated as the seller and the plaintiffs were designated as the buyers. The agreement was signed by the plaintiffs on August 24, 1977, and delivered thereafter to the corporation for its signature. It was subscribed in the corporate name by J. Lindy Childress, its president, as seller and returned days later to the plaintiffs with a copy of the blueprints for the contemplated dwelling. The blueprints for the house have inscribed in handwriting on the right center portion the following: "August 25, 1977, Jalich Homes, Inc., J. Lindy Childress, Pres." The plaintiffs' house was built substantially from these blueprints. Imprinted on one page of the blueprints is the following: "J. Lindy Childress, Builder."

---

[1] The plaintiffs challenge the factual findings in the memorandum of decision in seventeen respects. Such wholesale attacks are seldom efficacious; *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 391, 363 A.2d 160 (1975); and this case is no exception. The challenged findings are either supported by the evidence or are immaterial to the issues raised on appeal.

The plaintiffs conceded they did not rely upon the blueprints in submitting their offer to purchase of August 24, 1977. They further admit that they possess no papers or documents signed by Childress individually for the construction and sale of their home.

The plaintiffs' house was completed on or before November 30, 1977, in substantial compliance with the blueprints. The house was essentially built by a series of subcontractors hired by and under the supervision of Childress. The certificate of occupancy was issued on November 30, 1977, to Jalich Homes, Inc. The warranty deed conveying title to the property and dwelling was executed and delivered on November 30, 1977, from Jalich Homes, Inc., to the plaintiffs, Joseph A. Beckman and Roberta A. Beckman.

The plaintiffs and the corporation were represented by their own counsel at the closing. Childress was not present. All of the seller's documents had been signed and executed before the closing. The settlement statement, a department of housing and urban development form, designated the plaintiffs as borrowers and Jalich Homes, Inc., as seller. It was signed by the plaintiffs and the corporation. A corporate resolution was provided to the plaintiffs and their bank authorizing Childress to execute and deliver a warranty deed on behalf of the corporation. The adjustment sheet listed the corporation as seller and the plaintiffs as buyers. The corporation signed and delivered to the plaintiffs a builder's home owner's warranty. All of these documents were delivered to the plaintiffs at the closing. On November 22, 1977, the plaintiffs' attorney signed and delivered to the plaintiffs' lending bank a preliminary certificate of title wherein it was disclosed that the corporation purchased the subject property from one Joseph E. Mihaliak on March 23, 1977.

The trial court concluded upon all of the evidence that the plaintiffs contracted exclusively with the corporation, that the purchase agreement, dated August 24, 1977, constituted an offer from the plaintiffs to the corporation, that this offer was accepted by the corporation and that the evidence does not support the plaintiffs' contention that Childress individually and personally contracted with the plaintiffs to construct and sell them a residence.

The plaintiffs base their claim of partnership on the statutory presumption created by the Uniform Partnership Act, General Statutes §§ 34-39 through 34-81. Section 34-44 (1) defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." The word "person" is defined by § 34-40 to include corporations. There was no evidence that Childress and the corporation were carrying on any business as co-owners. All of the transactions respecting the property that is the subject of the present case were conducted in the corporate name. The only evidence offered by the plaintiffs to support their claim of partnership is testimony from Childress that he built a number of homes for the corporation for which he received a yearly income and that this income "usually comes from whatever profits that perhaps comes from a piece of property." The plaintiffs rely on § 34-45 (4). This section provides that "[t]he receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business . . . ." If we assume that this evidence was sufficient to raise the statutory presumption, the presumption, as the plaintiffs concede, is rebuttable. Other evidence established that Childress was the chief operating officer and principal stockholder of the corporation who supervised the construction of homes built by the corporation. In the face of this rebutting

evidence the plaintiffs' contention that the statutory presumption established the existence of the partnership as a matter of law is without merit.

The plaintiffs next claim that Childress should be held personally liable on the basis of estoppel. They assert that Childress advertised himself as a builder in The Hartford Courant; that at the start of negotiations Childress announced that he had built many homes; that they were taken to a number of homes built by Childress at one of which sites there was a sign stating that the builder was J. Lindy Childress; that they were shown a two-page set of plans on which was imprinted "J. Lindy Childress, Builder"; and that, even though the documents which they ultimately signed showed the corporation as the contracting party, Childress should not be relieved of individual liability because of his earlier representations. The trial court examined these claims and found them wanting. The plaintiffs conceded at the trial that they did not rely on the newspaper advertisement, or the sign or the plans in their negotiations. Furthermore, the court found that the plaintiffs had been advised before meeting Childress that he conducted his business in a corporate capacity under the name Jalich Homes, Inc. Finally, at all critical times, including the closing at which a series of documents showed the corporation as the party with whom they were contracting, the plaintiffs were represented by an attorney. The court's finding that there is no foundation in the facts for personal liability against Childress is soundly based and therefore must stand.

Finally, the plaintiffs claim individual liability against Childress under General Statutes §§ 47-116 and 52-563a (now § 47-121). These sections impose liability under an implied warranty on the builder/vendor of a new home in favor of the purchaser of any improved real estate. It is undisputed that the corporation was the

sole owner of the subject real estate. The plaintiffs claim, nonetheless, that Childress can be held liable under the statute as a subcontractor. The "facts" on which the plaintiffs rely to establish this claim are the same facts on which they rely to establish their claim of estoppel. The court found that, although the plaintiffs efficiently utilized the evidence available to them in an attempt to place the onus on Childress, in the face of the overwhelming evidence that the corporation was both the builder and seller, the plaintiffs had not satisfied their burden of proof.

## III

We next consider the trial court's evidential ruling. The plaintiffs called as a witness Sam Pescetello, building official of the town of Willington. Pescetello has been in the building business for forty-two years including eleven years as a building official in the towns of Ashford, Columbia and Willington. On direct examination he testified with respect to the existence of violations of the building code. On cross-examination he was asked whether he knew what a carpenter charges today (1981). The plaintiffs objected on the ground that this subject had not been addressed on direct examination. The court overruled the objection and the witness responded, "I don't enter into that type of—in the routine business." Later, without objection, the witness testified with respect to pay scales for carpenters and electricians in 1978. He also testified, without objection, concerning the cost of performing other work including cutting a new access into the attic, caulking, installing a new set of stairs, aluminum flashing, and installation of a grounding conductor. When he was asked about the cost of (sheetrock) compounding, the plaintiffs objected challenging his credentials to estimate costs. The court properly overruled the objection.

Other than for an examination of credibility, the scope of cross-examination is limited to the subjects of the direct examination. *State* v. *Zdanis,* 173 Conn. 189, 195, 377 A.2d 275 (1977); *Mendez* v. *Dorman,* 151 Conn. 193, 198, 195 A.2d 561 (1963). The direct examination of Pescetello was limited to an inquiry into the existence, number and extent of building code violations. The court allowed inquiry on cross-examination into the cost of correcting these violations. Even if this ruling was erroneous, it was harmless because the answer was irresponsive. *Sears* v. *Curtis,* 147 Conn. 311, 313, 160 A.2d 742 (1960). Thereafter, without objection, the witness testified extensively concerning the cost of various repairs. The plaintiffs, at one point, again objected, but this time on the ground that the witness was not qualified to give expert testimony on the cost of repairs. The court properly overruled the objection on the ground stated. On the basis of his extensive experience in the building business, both privately and as a public official, and his familiarity with various costs of construction, Pescetello was well qualified to express an opinion on the cost of correcting the code violations. Furthermore, the trial court, to the extent that it credited his testimony, was justified in relying on it for substantive purposes.

The trial court's assessment of damages is not subject to correction. The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 404–405, 365 A.2d 1086 (1976). In making its assessment of damages for breach of a construction contract the trier must determine the existence and extent of any deficiency and then calculate its loss to the injured

party. The determination of both of these issues involves a question of fact which will not be overturned unless the determination is clearly erroneous. Both the existence and valuation of various deficiencies were disputed by both lay and expert witnesses. The plaintiffs have failed to demonstrate wherein the trier's resolution of the disputed matters was clearly wrong.

There is no error.

In this opinion the other judges concurred.