GERALD N. DOE ET AL. *v.* SARACYN CORPORATION ET AL.

BROWN, C. J., JENNINGS, INGLIS, O'SULLIVAN and KING, Js.

Argued May 8—decided July 3, 1951

*J. Kenneth Bradley,* with whom were *Frederick Pope, Jr.,* and, on the brief, *Martin E. Gormley,* for the appellant-appellee (named defendant) and the appellee (defendant Sterling).

*John J. Hunt,* for the appellant (plaintiff Marie Doe) and for the appellee (named plaintiff).

O'SULLIVAN, J. Gerald Doe and his wife, Marie, joined in this action to recover damages for personal injuries occasioned, they alleged, by the unlawful acts of the Saracyn Corporation and Edward C. Sterling.

During the course of the trial Doe dropped Sterling as a party. The jury returned a defendants' verdict in Mrs. Doe's action. Comment on her appeal will be postponed until after disposition of the appeal taken by the Saracyn Corporation from the refusal of the court to set aside the verdict in favor of Doe and from the judgment entered thereon. We refer to Doe as the plaintiff and to the corporation as the defendant.

The plaintiff offered evidence to prove and claimed to have proved the following facts: On March 31, 1947, Sterling hired the plaintiff to work in a small chemical plant in West Redding. He began his work on the following day. Since he was living at that time in Danbury, he was obliged to commute by train. The plant was located on land owned by Sterling but under lease to the defendant. On the property was a small house, to the rear of which were open sheds where the chemical operations were carried out. A room in the house served as an office, and an adjoining one as a shower room for the employees. The rest of the house consisted of a four-room apartment. An artesian well, located close by, had been drilled for Sterling in 1943. It supplied water to the house and the sheds. From 1943 on, the property was in the possession and control of the defendant, but Sterling was permitted to use the premises for the manufacture of a chemical known as cacodylic acid. The process required large quantities of arsenic trioxide, a fine white powder which is partially soluble in water. This chemical is a poison of great toxic potentialities.

The defendant was organized as a corporation in 1942. Although Sterling provided all of its paid-in capital, he did not become one of its stockholders. All of the shares of stock except those given to qualify two other persons as directors were owned by his father-in-law, William H. Parks. Although the defendant was

the lessee of the property, the entire operation of the plant was directed and controlled by Sterling. All of the men working there, including the plaintiff, were employees of Sterling. He paid their wages and withheld such deductions for social security and income taxes as were required by law. The only person on the defendant's payroll was its president, Parks. The defendant was not engaged in any trade or business.

The shed immediately adjoining the house was used by Sterling as a mixing room to blend the chemical components. Occasionally some of the arsenic trioxide was spilled and some, escaping as dust into the atmosphere, settled on the concrete floor, which was frequently washed down with a hose. The water, with whatever it picked up, was carried off through a drain in the floor to a septic tank close to the house. The overflow from this tank, into which sewage from the house also entered, was discharged into a leaching system of loosely jointed tile pipe, set in coarse gravel to permit the liquid to soak into the ground. The arsenic which was washed into the septic tank passed into the leaching system without being affected by the biological process occurring in the septic tank. The ground was further contaminated as the result of the practice of storing arsenic-tainted waste products in drums set out in the open on the ground. The drums became corroded and their contents frequently leaked out. The soil around the premises was coarse, sandy and gravelly to a depth of four feet. Below was limestone bedrock. The artesian well had been drilled through this rock to a depth of ninety-seven feet. It was equipped, for thirty feet, with a steel casing sealed to the limestone with cement. Throughout the underlying bedrock there were numerous cavities, cracks and fissures which made conditions on the property ideal for the transmission of any water-soluble substance, such as arsenic

trioxide, from the ground into the water feeding the well.

On April 3, 1947, Andrew Popp moved into the apartment, which, until that time, had never been occupied. On the following day he became ill. His illness continued unabated, and after living in the house for a month he left. It was later discovered that he was suffering from arsenic poisoning. When he moved out, the defendant sublet the apartment to the plaintiff under an arrangement that he would pay the agreed weekly rent of $8 by working for Sterling eight extra hours each week on the chemical operations. He did not immediately bring his wife and child to West Redding. The apartment needed to be cleaned up, and, in addition, he wanted to make certain repairs to it. He continued to commute until he had finished these tasks. On June 15 he and his family moved into the house. A few days later he became ill. His condition grew so serious that he left at the end of the week with his wife and child. He entered a hospital, where it was found that he was afflicted with arsenic poisoning. Arsenic is a cumulative poison. Some persons have a greater tolerance for it than others. At times there is a lag between ingestion and the onset of symptoms. Very minute quantities are capable of producing poisoning. An analysis of the water in the well made on June 25 revealed the presence of 50 milligrams of arsenic per liter. The plaintiff had consumed water from faucets in the apartment from the time he obtained the lease in May. He had also drunk on occasions from faucets in the plant during the entire period of his employment.

After the plaintiff became sick, Sterling notified his workmen's compensation insurer of the illness. The defendant filed no such report, although it had accepted the terms of the Workmen's Compensation Act and was subject to its provisions. The only relationship between

the plaintiff and the defendant was that of tenant and landlord.

The plaintiff claimed that the defendant permitted a nuisance to be created and maintained on premises under its control; that it was negligent in allowing others to discharge arsenic on the ground, in failing to test the water from time to time, and in failing to warn the plaintiff that the water in the well might become contaminated; and that he was not guilty of contributory negligence and did not assume the risk of poisoning by drinking water.

So far as they are material to a review of the court's charge, the facts which the defendant offered evidence to prove and claimed to have proved are the following: In 1942 Sterling organized the defendant in order that it might engage in the chemical business at West Redding. It began to manufacture a crude grade cacodylic acid under the supervision of its president, Parks. It bought most of its raw materials from Sterling, to whom it sold all of its manufactured products at a price so set as to preclude the making of a profit. The plant was under the complete charge of Parks until he became incapacitated in 1946. Thereafter, Sterling took over the general supervision and directed and controlled all operations for the defendant. He did all of the hiring. He paid the wages of the defendant's employees with his own money and personally retained the deductions incidental to a payroll. He charged the defendant for disbursements thus made. All of his activities at West Redding were performed for the defendant and not for himself.

Extensive precautions were taken to ensure the safety of those handling the arsenic. Rules were posted and an established routine of personal hygiene was set up. The employees were furnished with special working clothes and gloves. Dust masks and gas masks were

provided as a protection against the powdered chemicals and fumes. Signs on the walls stressed the importance of washing before meals. Inspections of the premises were regularly made by the state department of health, but no order was ever received to change the operational procedure at the plant.

In March, 1947, Sterling hired the plaintiff to work for the defendant. The plaintiff was given full information of the nature of his job and of the danger of poisoning. In May, he asked Sterling for the use of the apartment. It was agreed that the plaintiff could have the place as long as he kept the grounds and building in good condition. He was to act as a watchman, take care of the furnace, clear away the brush and perform similar additional tasks. He was expected to work eight hours each week on these chores. He was thoroughly familiar with the dangers of arsenic poisoning. He was injured by his own negligence and assumed the risk. Although the defendant, through Sterling, sublet the apartment to him, the relationship was that of employer and employee, and the plaintiff's rights are governed by the Workmen's Compensation Act.

The defendant assigns error in the charge as given and in the refusal of the court to charge as requested. These assignments deal with the law as it pertains to contributory negligence, proximate cause, assumption of risk, landlord and tenant, and the Workmen's Compensation Act. It is true that the court did not adopt the language in which certain of the requests to charge were couched. This was not necessary. *Hoffberg* v. *Epstein*, 130 Conn. 613, 615, 36 A. 2d 388. The court performs its duty when its instructions are calculated "to give the jury a clear comprehension of the issues presented for their determination under the pleadings and upon the evidence, and suited to their guidance in the determination of those issues." *Rad-*

*wick* v. *Goldstein,* 90 Conn. 701, 706, 98 A. 583.   The instructions on contributory negligence met this test.

The defendant requested the court to charge as follows: "If you find any negligence on the part of the defendant, Saracyn Corporation, you must either find that such negligence was the proximate cause of the injuries complained of by the plaintiff, Gerald Doe, or you must bring in a verdict for the defendant.   To have been the proximate cause of the injuries complained of, the defendant's negligence must have been a substantial factor in causing said injuries."   The court so charged in substance.   The request, however, continued: "In other words, the liability of the defendant, Saracyn Corporation, cannot be based upon the amounts of contaminated water consumed by the plaintiff, Gerald Doe, owing to the negligence of Edward C. Sterling. . . ."   We understand this as a request to charge that the defendant, if liable at all, should be held to respond in damages for only a proportion of the actual injuries sustained by the plaintiff.   This request, whether construed as one involving the law of proximate cause or that of probable consequences, was properly refused.   The request was based on the assumption that the jury might find negligence on the part of both the defendant and Sterling.   The plaintiff suffered a single, indivisible injury, namely, arsenic poisoning.   Where the concurrent negligence of two persons, although acting independently of each other, is in combination the proximate cause of a single injury, either is responsible for the whole injury even though his act alone might not have caused the entire injury. *Figlar* v. *Gordon,* 133 Conn. 577, 582, 53 A. 2d 645; *Goodhue* v. *Ballard,* 122 Conn. 542, 546, 191 A. 101; *Watt* v. *Combs,* 244 Ala. 31, 37, 12 So. 2d 189; *Consolidated Ice Machine Co.* v. *Keifer,* 134 Ill. 481, 491, 25

N. E. 799; 1 Cooley, Torts (4th Ed.) § 52; 38 Am. Jur. 946, § 257.

The defendant filed three requests involving assumption of risk. The court did not follow the form of the requests but charged almost verbatim in the language of *Dean* v. *Hershowitz*, 119 Conn. 398, 412, 177 A. 262. The defendant's criticism is that the instruction erroneously restricted the application of the principle by requiring comprehension of the risk that the water was contaminated. Such, however, is our law. Assumption of risk is available as a defense only when a plaintiff has, or ought to have, knowledge and comprehension of the particular peril to which he is exposed and thereafter continues of his own volition to subject himself to that peril. Id., 412. The plaintiff may not foresee the exact manner by which injury may ensue, but he must know and comprehend that the peril exists. The court's charge on the principle was correct.

The defendant requested a charge that liability could not be imposed unless the jury found that it had control of the property. The assignment of error directed to this matter is captious. Not only did the answer expressly admit that the defendant was in such control but the court substantially complied with the request.

The first special defense alleged that the plaintiff was an employee of the defendant and, as such, subject to the provisions of the Workmen's Compensation Act. This raised the most crucial issue in the case. Of the requests to charge directed to this subject, one of them, the defendant maintains, required the court to charge on the so-called principal employer section of the act. General Statutes § 7423. This provides: "When any principal employer shall procure any work to be done wholly or in part for him by a contractor, or through him by a subcontractor, and the work so procured to be done shall be a part or process in the trade or busi-

ness of such principal employer, and shall be performed in, on or about premises under his control, then such principal employer shall be liable to pay all compensation under this chapter to the same extent as if the work were done without the intervention of such contractor or subcontractor." There was nothing in the request to indicate that the defendant relied on this statute. No specific reference was made to it, nor did counsel mention it when raising objections at the conclusion of the charge. "Any party intending to claim the benefit of . . . any specific statute shall file a written request to charge on the legal principle involved." Practice Book § 156.

Another request sought a charge to the effect that, if the jury found that Sterling was not only the owner of substantially all of the stock of the defendant but actually controlled it to the point where there was a complete merger of interests so that the defendant was but a subsidiary in carrying out Sterling's operations, the plaintiff would be an employee of merged identities and, as such, subject to the Workmen's Compensation Act. This request was properly refused. The defendant was a legal entity with separate rights and powers conferred and duties and liabilities imposed by law. *Bator* v. *United Sausage Co.*, 138 Conn. 18, 22, 81 A. 2d 442. Under certain circumstances, the corporate entity may be disregarded, but the claims of proof do not warrant such action in this case. *Hoffman Wall Paper Co.* v. *Hartford,* 114 Conn. 531, 534, 159 A. 346. The entity will not be ignored where those in control have deliberately adopted the corporate form in order to secure its advantages. *Schenley Distillers Corporation* v. *United States,* 326 U. S. 432, 437, 66 S. Ct. 247, 90 L. Ed. 181.

The court charged the jury that if the plaintiff was an employee of the defendant his rights were to be

determined by the Workmen's Compensation Act; it referred to the answer wherein this defense was alleged; it stated that the defendant claimed that the plaintiff was its employee and that, because such injuries as he received arose out of and in the course of his employment, his remedy rested in the provisions of the compensation act and not in a court of law; it recited the statutory definitions of employer and employee; and it focused the jury's attention upon the vital question: By whom was Gerald Doe employed? It discussed this question at some length, with an ample explanation of the proper test to be applied in reaching an answer. Reading the charge as a whole, we are satisfied that it fairly and sufficiently met the salient issues.

The defendant further assigns error in the failure of the court to set the verdict aside. A discussion of this assignment will unduly lengthen this opinion. We do point out, however, that the plaintiff's claim that his relationship with the defendant was one of landlord and tenant rather than of employer and employee was not only supported by the evidence but was actually admitted in the defendant's answer. It is sufficient to say that the jury could reasonably have reached the verdict which they returned.

Six interrogatories were submitted to the jury. The defendant maintains that the answers were, in part, inconsistent with a verdict for the plaintiff and a verdict against his wife. It is apparent that the jury did not accept her testimony that she too had been poisoned. For this reason, the claimed inconsistency disappears and makes meritless her appeal from the court's failure to set aside the verdict against her.

There is no error on either appeal.

In this opinion the other judges concurred.