RICHARD T. CUMMINGS v. GENERAL MOTORS CORPORATION ET AL.

BALDWIN, KING, MURPHY, MELLITZ and SHEA, Js.

Argued April 9—decided May 26, 1959

*William T. Holleran,* with whom was *Arthur B. O'Keefe, Sr.,* for the appellants (defendants).

*Allyn L. Brown, Jr.,* with whom was *James J. Dutton, Jr.,* for the appellee (plaintiff).

BALDWIN, J. The plaintiff had a verdict in the Superior Court in an action for negligence. The defendants have appealed and have assigned error in the finding, in the charge to the jury, in the denial of their motions to set aside the verdict and to strike certain testimony offered by the plaintiff, and in the granting of the plaintiff's motion to amend the complaint. They have sought extensive corrections in the finding. They have, however,

abandoned the errors assigned in the charge, and no correction of the finding is warranted or necessary to present adequately the errors assigned in the granting of the motion to amend and the denial of the motion to strike. *Salvatore* v. *Hayden,* 144 Conn. 437, 439, 133 A.2d 622; Maltbie, Conn. App. Proc., p. 199.

In reviewing the denial of a motion to set aside a verdict which is claimed to be contrary to the law and against the evidence, we view the evidence in the light most favorable to the sustaining of the verdict. *Kiss* v. *Kahm,* 132 Conn. 593, 594, 46 A.2d 337; Maltbie, Conn. App. Proc. § 189. The jury reasonably could find the following facts: The plaintiff was injured on June 20, 1953, while acting as a member of a committee supervising a "soap box derby" at Tunnel Hill on route 12 in the town of Lisbon. The derby was part of a nationwide advertising program of the Chevrolet division of General Motors Corporation and was conducted by a subsidiary corporation, All-American Soap Box Derby, Inc., in collaboration with local sponsors. The local sponsors in Norwich were the Kiwanis Club; Mallon Chevrolet, Inc.; and The Norwich Bulletin Company, a newspaper publisher. The latter two, together with General Motors Corporation and All-American Soap Box Derby, Inc., are the defendants in this action. Theodore Mallon, president of Mallon Chevrolet, Inc., first suggested the idea of holding a derby. He secured the co-operation of members of the Kiwanis Club, of which the plaintiff was one, and the services of George V. Scanlon, who had broad knowledge of soap box derbies. All-American Soap Box Derby, Inc., provided a manual containing over-all instructions for organizing a derby, the construction of cars by the boy contest-

ants, the laying out of the course, and safety measures. The participating cars were built by the contestants, some of whom used wheels, brakes and steering mechanisms furnished at cost by Mallon Chevrolet, Inc. The contestants coasted in the cars downhill on a public highway over a specified course. By means of a series of races, the winners of the first, second and third places were selected. The winner of the local derby could compete, with winners of other local derbies across the country, in final races at Akron, Ohio.

About five months prior to the derby, Mallon organized a large committee from among employees of his company and the Norwich Bulletin Company and members of the Kiwanis Club. The course for the 1953 race was laid out under the direction of Scanlon, purportedly in accordance with the manual provided by All-American Soap Box Derby, Inc. The plaintiff became a member of the committee two or three weeks before the race. Under the rules, a participating car with the driver could not weigh in excess of 250 pounds. Each car was equipped with a foot pedal which operated a friction-type brake which dropped through the floor of the car to the pavement. The over-all course included approximately one-half mile of highway running in a general easterly and westerly direction. There were two lanes of concrete each eleven feet wide. The two cars participating in each race were released near the top of the hill and descended in a westerly direction down a grade of as much as 7 per cent in places to a low point where the road started to ascend at a grade varying from 1.6 to 2.7 per cent. The finish line was located a short distance east of the low point. A barrier of twenty-five sacks of straw was placed across the highway west of the

finish line. Beyond this barrier provision was made for parking the two trucks which picked up the cars competing in each race and returned the winning car to the top of the hill. The manual provided that these trucks should be parked off the paved portion of the highway.

The plaintiff was stationed near and east of the barrier. Several races were run without incident. In the fourth or fifth race one of the cars, without having fully stopped, came as far as the place where the plaintiff was standing. The plaintiff grabbed it and stopped it before it reached the barrier. At this time the two motor trucks were parked, one in each lane of the highway, with their rear ends toward the barrier. In the seventh or eighth race the two participating cars came together half way down the hill and then separated. Their speed did not slacken, and as they approached the finish line they were traveling at twenty-five to thirty miles an hour. The plaintiff watched the car in the lane nearest to him for the application of its brake, as he had done during previous races, but the brake was not applied and the speed of the car did not decrease. As the car went by the plaintiff he grabbed it; it threw him to the pavement and skidded to a stop. When he attempted to stop the car, it was only thirty to thirty-five feet from the truck parked on the highway behind the barrier. He thought that the car would go through the barrier and under the rear end of the truck and that the boy driver would be seriously hurt. For that reason he tried to stop the car before it reached the barrier and, in attempting to do so, was injured.

The plaintiff specified, among other grounds, that the defendants were negligent in that they selected a course which was too steep, which did not have

adequate space in which to bring the cars to a stop after they had crossed the finish line, and which did not have proper barriers at the end of the course; in that they allowed obstructions (the trucks) to remain on the paved portion of the course; and in that they placed the plaintiff in a position of danger without warning him. The manual furnished by All-American Soap Box Derby, Inc., as a guide in the conduct of a local derby contained certain specifications. The jury could properly find that this manual established standards of due care in the conduct of a derby. See *Nolan* v. *New York, N.H. & H.R. Co.*, 70 Conn. 159, 179, 39 A. 115. The manual recommended that the maximum grade of the slope down which the cars would race should not exceed 6 per cent, so that a speed not in excess of twenty miles an hour would be attained. There was evidence from which the jury could find that the grade in places on Tunnel Hill exceeded 6 per cent and that the participating cars actually attained speeds substantially in excess of twenty miles an hour. The manual directed that a "safety zone" of 750 to 1000 feet, free of all obstructions, should be maintained beyond the finish line "so that each car [might] have an opportunity to slow down and come to a safe stop without interference, preferably without the use of brakes." The jury could find that the safety zone here was too short and that the defendants allowed trucks to be placed on the course too near the finish line to provide an opportunity for bringing the cars to a safe stop. There was a positive admonition against the use of any artificial means beyond the finish line to stop the cars. This admonition, the jury could find, was not followed. The jury could also find that the grade, the speed and the lack of a proper safety zone beyond the

finish line created a hazard which required a warning to the plaintiff from those conducting the derby. There was ample evidence to support the conclusion that the defendants were negligent in a way which proximately caused the plaintiff's injuries.

The defendants pleaded in two special defenses the contributory negligence of the plaintiff and the assumption by him of the risk of injury to himself when he grabbed the car which threw and injured him. These defenses made necessary two rulings of the trial court which are assigned as error. They are also involved in the court's denial of the motion to set aside the verdict, a matter which we will consider after we have disposed of the rulings. The plaintiff testified on direct examination and introduced the testimony of one of his physicians. He then moved for permission to amend the specifications of negligence in his complaint. The court allowed the amendment, which alleged, in substance, that the defendants knew or should have known of the risk of bodily harm to the contestants in the races and should have "foreseen the likelihood of an intervening rescuer such as the plaintiff and possible consequent injury to such rescuer." The defendants urged that the amendment introduced a new theory of liability into the case and that they were not prepared to defend against it. The allowance of an amendment to a complaint, after the time prescribed by § 52-128 of the 1958 Revision and §§ 92 and 93 of the Practice Book has expired, rests in the sound discretion of the court. *Antonofsky* v. *Goldberg,* 144 Conn. 594, 597, 136 A.2d 338, and cases cited; Maltbie, Conn. App. Proc. § 63. "Much depends upon the particular circumstances of each case. The factors to be considered include unreasonable delay, fairness to the

opposing parties, and negligence of the party offering the amendment." *Antonofsky* v. *Goldberg, supra.* In the instant case, the allegations of the complaint were sufficient without amendment to allow proof that the defendants had promoted the derby, had solicited the services of the plaintiff to assist them in its operation and had placed him in a position where he was charged with at least part of the responsibility of saving a contestant from harm. The conduct of the plaintiff which resulted in his injuries is described in detail in the complaint. The defendants' special defenses were apparently designed to meet the proof of this alleged conduct. The amendment added nothing which could or did affect the issue raised by the pleadings. Its allowance was not an abuse of discretion. *Spirt* v. *Albert,* 109 Conn. 292, 303, 146 A. 717.

On the direct examination of Stephen DeSilvio, a witness for the plaintiff, it appeared that he was an official of the derby stationed at the finish line and that he was standing a very short distance from the plaintiff when the latter grabbed the car and was injured. DeSilvio testified that when he was trying to pick up the plaintiff he asked him, "Dick, . . . [w]hy did you do it?" The plaintiff's reply was, "Steve, I thought the boy was going to be killed." The defendants moved to strike the question and answer on the ground that the answer was not a part of the res gestae. The court denied the motion. The plaintiff's statement was such a spontaneous utterance as to call for the proper exercise of the court's discretion as to its admissibility under our rule. *Perry* v. *Haritos,* 100 Conn. 476, 482, 124 A. 44; *Haugh* v. *Kirsch,* 105 Conn. 429, 433, 135 A. 568; *Rockhill* v. *White Line Bus Co.,* 109 Conn. 706, 708, 145 A. 504; *Overland Construction Co.* v.

*Sydnor,* 70 F.2d 338, 339; 6 Wigmore, Evidence (3d Ed.) § 1747; notes, 163 A.L.R. 15, 66, 95; 53 A.L.R.2d 1245, 1259; 56 A.L.R.2d 372, 377. That discretion was not abused.

The disposition of these two rulings brings us to the final question, whether the trial court properly denied the motion to set aside the verdict despite the defendants' claim that the plaintiff assumed the risk and was guilty of contributory negligence and consequently must be denied recovery as a matter of law. To be charged with assumption of the risk, the plaintiff must have known, or ought reasonably to have known and comprehended, the danger to which he was exposed and must, knowing the danger, have nevertheless continued of his own will to expose himself to it. *Starkel* v. *Edward Balf Co.,* 142 Conn. 336, 342, 114 A.2d 199; *Doe* v. *Saracyn Corporation,* 138 Conn. 69, 77, 82 A.2d 811; *Dean* v. *Hershowitz,* 119 Conn. 398, 412, 177 A. 262. The jury could properly find that the defendants stationed the plaintiff in a place fraught with possible danger and that they might reasonably have anticipated that he, faced with an emergency, would take reasonable measures to prevent injury to a boy participating in the derby. As to this defense, the circumstances presented an issue of fact for the trier and the defendants had the burden of proof. *Zullo* v. *Zullo,* 138 Conn. 712, 715, 89 A.2d 216; *Pall* v. *Pall,* 137 Conn. 347, 349, 77 A.2d 345; *Starkel* v. *Edward Balf Co.,* supra. It cannot be held that as a matter of law the plaintiff assumed the risk.

The claim that the plaintiff was guilty of contributory negligence as a matter of law poses the further question as to whether his conduct in trying to stop the car comes within the so-called rescue doctrine. "It is not contributory negligence for a plaintiff to

expose himself to danger in a reasonable effort to save a third person . . . from harm." Restatement, 2 Torts § 472; *Cote* v. *Palmer*, 127 Conn. 321, 327, 16 A.2d 595; note, 158 A.L.R. 189, 190; 2 Harper & James, Torts, p. 1167; 38 Am. Jur. 912, § 228. The jury reasonably could find that the speed of the car as it approached the barrier, which was made of sacks of straw and was inadequate to stop the car, was so great that the car with the boy in it was likely to collide with the rear end of the truck parked on the paved part of the roadway just beyond the barrier. They could also find that the plaintiff, sensing this danger, which was created by the negligence of the defendants in the manner in which they were conducting the derby, acted reasonably in attempting to stop the car and so to prevent serious injury to the boy. Under these circumstances, it cannot be said that the conduct of the plaintiff was contributorily negligent as a matter of law.

There is no error.

In this opinion the other judges concurred.