[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 11080
The undisputed facts of this case present squarely the issue of to what extent the provisions of § 8-30g(b) govern the threshold jurisdictional requirement of standing in an affordable housing land use appeal.
The pertinent facts are as follows: On February 29, 1995 the plaintiff was the contract purchaser of 39.5 acres of land in the Town of Cheshire. In such capacity the plaintiff applied to the defendant Planning and Zoning Commission for (1) amendments to the zoning regulations designed to permit the construction of affordable housing in the town; (2) rezoning of the 39.5 acres into a zone that would permit the construction of affordable housing; and (3) a special permit for construction of a three hundred rental unit residential development in which at least 20% of the units would be dedicated to affordable housing within the meaning of § 8-30g. On June 27, 1995 the defendant denied the application. On March 29, 1996 while this appeal was pending the 39.5 acres were conveyed to a Connecticut corporation known as Industrial Associates, Inc.
The fact of such conveyance was first brought to anyone's attention by letter from the plaintiff's attorney, Timothy S. Hollister dated May 19, 1997. In response to this information the defendant moved for leave to file an amended answer in order ; to raise the special defense of lack of subject matter jurisdiction based on the plaintiff's lack of standing and capacity to sue. That motion was granted by agreement and in accordance therewith, on July 9, 1997, the defendant filed its "Second Answer . . . with Special Defense" which has been denied by the plaintiff.
On June 5, 1997 the plaintiff filed a motion to add as parties plaintiff, Industrial Associates, Inc. (hereinafter "Industrial") alleging that Industrial is the new record title holder of the property, Paul Bowman and Frank DiNatali (hereinafter Bowman and DiNatali) alleging that they are the real parties in interest pursuant to § 52-101 and § 52-107 of the General Statutes. The plaintiff has also filed a motion to amend the appeal seeking to add allegations that the parties sought to be added are aggrieved persons.
Because of the complexity of the issues generated by the plaintiff's loss of ownership of the property and the ensuing CT Page 11081 motions to add parties' plaintiff, the court ordered a bifurcation of the trial limited to the issue of whether the court retains jurisdiction to entertain the appeal at this stage of the proceeding. Goldfeld v. Planning and Zoning Commission,3 Conn. App. 172, 177 (1985).
The fact that the plaintiff was divested of all interest in the property on March 29, 1996 was confirmed by the evidence at trial. The evidence also showed that Industrial was created in March 1996 and that it has qualified with the U.S. Internal Revenue Service as a subchapter S corporation.[1] The plaintiff also proved that the plaintiff corporation was similarly qualified as a subchapter S corporation.
The testimony showed that Bowman and DiNatali are the sole officers, directors and shareholders of both of the plaintiff and Industrial. Finally, the evidence revealed that both Bowman and DiNatali personally guaranteed the mortgage loan which financed the purchase of the property and continued to be the guarantors at the time of trial.
It is on these facts that the plaintiff predicates its motion to add plaintiffs and amend the appeal. Ordinarily, motions made under § 52-101 and § 52-107 are procedural in nature but these motions clearly implicate the subject matter jurisdiction of this court because they require the court to determine whether any or all of the would be plaintiffs possess the requisite standing to prosecute this appeal.
"Standing is the legal right to set judicial machinery in motion." One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of the action or a legal or equitable right, title or interest in the subject matter of the controversy. "`Admare Construction Co. v. Freedman"',191 Conn. 497, 501, 467 A.2d 674 (1983). Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." Christ-Janer v. A.F. Conteand Company, 8 Conn. App. 83, 90 (1986).
Each of the parties has treated the concept of standing as being governed by the principles which control a person's status as an aggrieved party. Indeed, our Supreme Court has treated aggrievement as a subset of the broader concept of standing.Primerica v. Planning and Zoning, 211 Conn. 85, 94 (1989); Carl
CT Page 11082Herzog Foundation, Inc. v. University of Bridgeport, 243 Conn. 1,5, (1997). Yet, at the same time the court has stated that "the test for determining aggrievement is broader than injury to real property and that the "interest" which may be the subject of aggrievement need not be confined to an interest in real property." Mystic Marine Life Aquarium, Inc. v. Gill,175 Conn. 483, 493 (1978).
The principle of standing, irrespective of whether it is analyzed from the stand point of aggrievement in its classical sense or on the basis of whether the plaintiff is a proper party to request an adjudication, Steeneck v. University of Bridgeport,235 Conn. 572, 579 (1995), must be considered in conjunction with the requirement that an administrative appeal must comply strictly with the statutory provisions by which it was created.Basilicato v. DPUC, 197 Conn. 320, 322 (1985). With these principles to guide the court attention is now focused on §8-30g(b) which provides in pertinent part as follows:
 "Any person whose affordable housing application is denied or is approved with restrictions which have a substantial adverse impact on the viability of the affordable housing development or the degree of afford ability of the affordable dwelling units . . . may appeal such decision pursuant to the procedures of this section . . . Except as otherwise provided in this section, appeals involving an affordable housing application shall proceed in conformance with the provision of said sections § 8-8, § 8-9, § 8-28, § 8-30 or § 8-30a, as applicable."
Until enactment of § 8-30g, § 8-8 exclusively governed the right to appeal the decision of a zoning authority. Under § 8-8 only aggrieved persons are given that right. Although in a non zoning context the Supreme Court has said that having an interest in real property is not always an essential ingredient of aggrievement, conventional analyses of the principles of classical aggrievement in a zoning context have turned on whether the plaintiff in question owns or possesses an interest in real property.[2] This apparently accounts for the fact that with the exception of TCR New Canaan, Inc. v. Planningand Zoning Commission of Trumbull, 6 CONN. L. RPTR. 4, 91 (1992) and D'Amato v. Orange Planning and Zoning Commission, 10 CONN. L. RPTR 14, 444 (1994), none of the affordable housing land use appeals decided to date have had the need to consider whether CT Page 11083 some interest in real property is necessary to establish standing at the various times pertinent to the proceeding. In TCR NewCanaan supra at n. 14 the court stated that in enacting §8-30g "the legislature has thus limited appeals under the affordable housing statute to developer applicants. Any other appeals such as those by abutters, neighbors and those who can prove classical aggrievement are governed by § 8-8a". The court then proceeded to find the plaintiff to be classically aggrieved by virtue of the plaintiff's status as a contract purchaser.
In D'Amato v. Orange, supra at 446, this court said the following:
 "By its terms § 8-30g(b) creates a new level of standing for affordable housing appeals which is not wholly dependent upon ownership, possession or control of a property interest. See, Richards v. Planning and Zoning Commission, 170 Conn. 318 (1976). This provision of the statute is conspicuous by its omission of the term "aggrieved". . . .
 Ostensibly § (b) confers standing to appeal on any person whether or not aggrieved whose affordable housing application is denied or approved with restrictions that adversely impact viability in a substantial way. "Affordable housing application" is defined in § 8-30g(a)(2) as `any application made to a commission in connection with an affordable housing development by a person who proposes to develop such affordable housing'". (Emphasis added).
Thus, without determining whether such a person must be aggrieved in the classical sense it must first be determined whether the plaintiff or any of the persons who seek to be added as parties are not only persons whose affordable housing application were denied but also whether they are persons who propose to develop the affordable housing. This inquiry simply asks "who is the real party in interest under the statute"?Richards v. Planning and Zoning Commission, supra at 323.
It is noted that the last sentence of § 8-30g(b) provides that "except as otherwise provided in this section appeals shall proceed in conformance with § 8-8, § 8-9, § 8-28, § 8-30 or § 8-30a as applicable". The word "proceed" CT Page 11084 relates obviously to matters of procedure and not of substance. Webster's New World Dictionary 2nd Coll. Ed. 1979 defines the word "proceed" as "move along or be carried on." Moreover, the position of the word "proceed" after the word "appeals" evinces a legislative presumption that the appeal is already jurisdictionally sound before the appeal gets to proceed in accordance with those statutes. Section 8-8 which governs conventional zoning appeals explicitly requires that a person be aggrieved before being allowed to maintain an appeal. The jurisdictional prerequisite of aggrievement can hardly be deemed procedural. Subject matter jurisdiction is manifestly substantive.
Furthermore, the requirement that the applicant propose to build affordable housing implies an element of seriousness and provides ample protection against the unlikely possibility of filings by frivolous applicants who have no present or potential property interest in the site. As our Supreme Court stated inKaufman v. Danbury, supra at 141, the applicant must provide some "meaningful assurance" that he will build affordable housing. Thus, the threshold jurisdictional hearing under § 8-30g(b) must have as its purpose a search for whether the appellant-plaintiff is a person who sincerely proposes to develop affordable housing, not necessarily whether that person has a sufficient property interest to satisfy the test of aggrievement.
By way of example, a federally funded not-for-profit-applicant may make application under § 8-30g pursuant to an informal arrangement with the owner of the property which falls short of that which is necessary to create a property interest. See, e.g. West Hartford Interfaith Coalition, Inc. v. TownCouncil, supra. This court recognizes that many not for profit organizations which operate on limited budgets may not have the financial resources necessary to enable them to "buy" an option or furnish consideration for a conditional contract of purchase. Our Supreme Court recognized this in Kaufman v. Danbury, supra at 141.
Each of the persons who claims standing in this proceeding will be considered in order.
Partners Equity, Inc, ("Partners").
While Partners was the applicant before the commission, was the option holder at the time the commission acted and continued in both capacities at the time that the appeal was taken, it divested itself of all CT Page 11085 connection with the application when it lost its interest in the property by virtue of the conveyance from Amba Realty (the owner-optionor) to Industrial. Moreover, there was no evidence at trial that Partners has anything whatsoever to do with either the property or the proposal to develop affordable housing that was embodied in the denied application.
Industrial
Because it was not formed until March 1996 this corporation could not have been a person whose application was denied within the meaning of the statute although it acquired title to the property during the pendency of this appeal. Curiously, no evidence was offered that Industrial intends to adhere to partner's plan to develop affordable housing or offer its own plan. Certainly there was no evidence of an assignment of Partner's rights to the application as denied or an assignment of the right to pursue this appeal. At oral argument, the court was asked to infer from the fact that Industrial moved to be added as a party plaintiff that it intended thereby to pursue Partner's proposal to develop affordable housing. In fact, the proposed amended appeal does not allege anything more than the fact of Industrial's ownership of the property since March 1996. It alleges neither that Industrial is aggrieved nor that it intends to develop affordable housing at the site. While names can be misleading, the court might be justified in inferring that the very title "Industrial Associates" connotes an intention to engage in some business other than the construction of affordable housing. It is further noted that there was no assignment of the option agreement to Industrial and no mention of affordable housing in the deed from Ambra Realty Corporation to Industrial (Exhibit D). There is no basis in the record for the inference requested.
Bowman and DiNatali
The proposed amended appeal alleges that Bowman and DiNatali are aggrieved by reason of their "exclusive and uncontested control" of both Partners and Industrial and their "exclusive and uncontested possession" of the property. They argue that they are aggrieved in their "derivative or affiliated capacity" which flows from their status as sole shareholders in subchapter S corporations, and the only officers and directors if both corporations. They further argue that by virtue of that status they are the parties who are actually in possession and control CT Page 11086 of the property. Finally, they argue that the "tight relationship" between the two shareholders and Industrial is reinforced by the fact that they became guarantors of Industrial's mortgage.
The difficulty with Bowman and DiNatali's position is that it ignores the legal distinction between a corporation and its shareholders. It does not matter that the corporation "is a so called closed corporation, with only [few] stockholders, it is nevertheless a legal entity with separate rights and powers conferred and duties and liabilities imposed by law." Betar v.United Sausage Co., 138 Conn. 18, 21-22, 81 A.2d 442 (1951). Thus, it has been said that "[t]he stockholder is not the owner of the property of the corporation;" Silverman v. Blodgett,105 Conn. 192, 213, 134 A.2d 778 (1926), modified on other grounds,277 U.S. 1, 72 L.Ed. 749, 48 S.Ct. 410 (1928); State v. Harris,supra, "stockholders are not personally liable for the acts and obligations of the corporation." Saphir v. Neustadt, 177 Conn. 191,205, 413 A.2d 43 (1979); DeSantis v. Piccadilly Land Corp.,3 Conn. App. 310, 313-14, 487 A.2d 1110 (1985). Their reliance onAntonucci v. Hartford Roman Catholic Diocesan Corp., 142 Conn. 349
(1945) is misplaced because there the shareholders were in possession of the property to the exclusion of the corporation.
Under certain circumstances however the court will disregard the corporate entity and look to the individuals who control it. "The cases where this will be done are those in which the corporation is a mere sham or device to accomplish some ulterior purpose or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock . . . or whether the purposes is to evade some statute or accomplish some fraud for an illegal purpose . . . or in some other like situation . . . unless something of this nature is established, to refuse to recognize the corporate entity as such is in the words of Chief Judge Cardozo, to `thwart the public policy of the state instead of defending and upholding it.'" (Citations omitted.) Hoffman Wallpaper Co. v. Hartford, 114 Conn. 531,534-35, 159 A. 346 (1932). The corporate entity however "will not be ignored where those in control have deliberately adopted the corporate form in order to secure its advantages." Doe v. SaracynCorp., 138 Conn. 69, 78, 82 A.2d 811 (1951). "The mere fact that the corporation is organized to take over the property and business of an individual, to whom is issued and who continues to hold and control substantially all its stock, is no sufficient basis for disregarding the corporate entity if the legal CT Page 11087 requirements of the statutes governing it are complied with. The limitation of personal responsibility in the conduct of a business, freedom from the necessity of continuous personal control and responsibility, the desirability that the business may be carried on without interruption in the case of illness or death, are all legitimate ends in harmony with the purposes for which corporations are permitted to be established; and so long as no circumstances such as those listed above are present, the courts can not look through the corporation to the stockholder."Hoffman Wallpaper Co. v. Hartford, supra at 535-36.
In a similar context, the Appellate Court in D.S. Associatesv. Planning and Zoning Commission, 27 Conn. 508, 572 (1992) adhered to the distinction between a partnership and a corporation when the partners and the corporate shareholders were identical.
 D.S. Associates is a partnership, Twin Pines is a corporation. Even though shareholders of the corporation and the partners are all the same the partnership and the corporation have a separate legal identity and are separate persons under the law. Fidelity Trust Co. v. B.V.D. Associates, 196 Conn. 270, 279-81, 492 A.2d 180 (1985). "`If they adopt a corporate form, with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They can not be partners inter sese and the corporation as to the rest of the world.'" Karanian v. Maulucci, 185 Conn. 320, 324, 440 A.2d 959
(1981)."
Despite the fact that they identified themselves to the commission as the principals of Partners there is nothing in the record to suggest that they as individuals as opposed to their corporation were the persons who proposed to develop this property for affordable housing or were to be personally responsible for it in any way. The fact that they are personal guarantors of the note and mortgage given to finance the purchase of the property does not in any way make them responsible for the development of affordable housing on the property. The plaintiff offered no evidence or argument that the mortgage documents even mentioned affordable housing.
Even if Bowman and DiNatali were successfully to establish identity between themselves as shareholders and their corporations they would still have to demonstrate that the interest which they seek to have protected in this appeal falls arguably within the zone of interests to be regulated by § CT Page 110888-30g. Whether that is the case depends upon whether the defendant commission owed a duty to the plaintiff and violated that duty.Planning and Zoning Commission v. Gaal, 9 Conn. App. 538 (1987). In assessing whether the commission owed a duty to the plaintiff the court must examine the function and purpose of § 8-30g. As our Supreme Court recognized in West Hartford InterfaithCoalition, Inc. v. Town Council, supra at 511, "the key purpose of § 8-30g is to encourage and facilitate the much needed development of affordable housing throughout the state". Section8-30g therefore imposed upon the defendant commission with respect to persons seeking to build affordable housing a duty conscientiously to apply the provisions of that statute. The commission's duty in this case extended to the applicant, Partners who proposed to develop the affordable housing and to the owner of the property whose name and signature was required on the application. The commission had no duty to the individuals, Bowman and DiNatali, because they were not parties anticipated to be benefitted [benefited] by the provisions of § 8-30g. Planning and Zoning Commission v. Gaal,supra at 546.
Based upon the foregoing analysis there is no one before the court who has standing to maintain this appeal.
Accordingly, the appeal is dismissed.
MOTTOLESE, J.