[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION #110.01 MOTION FOR SUMMARY JUDGMENT
The instant action was brought in a nine Count Complaint. The Plaintiff Kenneth Kogut (hereinafter "Kogut") alleges that the Defendant Church Homes, Inc., is a Connecticut Corporation that operates a nursing home in the City of Meriden Connecticut. The Defendant Norman E. Harper (hereinafter "Harper") is the President and Chief Executive Officer of the Defendant Church Homes, Inc., (hereinafter "Church Homes") and at all times pertinent to said Complaint he was acting as the agent, servant, officer and employee of Church Homes and was acting within its authority.
Count One of the Complaint sounds in breach of contract. The Plaintiff alleges that for an extended period prior to December 13, 1999, he and the Defendant Church Homes and were parties to an oral and implied contract by the terms of which Kogut was to perform landscaping and related work at the Defendant, Church Homes" Meriden facility ("Miller Memorial"). The Plaintiff further alleges that he fully performed his obligations pursuant to the contract, but the Defendant unilaterally terminated the contract for reasons "having no legitimate relationship to the provisions of the contract."
Count Two of the Complaint is addressed to the Defendant Harper and sounds in defamation. The Plaintiff alleges that on or about December 13, 1999, the Defendant Harper:
 . . . [F]alsely and maliciously stated or implied to third persons, including Donna Porstner, a reporter for the Meriden Record-Journal, a newspaper of general circulation published in the City or Meriden, that the Plaintiff was a supporter of the Ku Klux Klan.
The Plaintiff further alleges that on December 14, 1999, the Defendant Harper: CT Page 14237
 . . . [F]alsely and maliciously stated or implied to third persons, including Ken Byron, a reporter for the Hartford Courant, a newspaper of general circulation published in the state of Connecticut, that the Plaintiff was a supporter of the Ku Klux Klan.
Count Three of the Complaint is directed to the Defendant Church Homes. It incorporates Count Two and sounds in defamation against this Defendant.
Count Four is directed to the Defendant Harper and sounds in false light.
Count Five is directed to the Defendant Church Homes and sounds in false light.
Count Six is directed to the Defendant Harper and sounds in reckless or intentional infliction of emotional distress.
Count Seven is directed to the Defendant Church Homes and sounds in reckless or intentional infliction of emotional distress.
Count Eight is directed to the Defendant Harper and sounds in negligent infliction of emotional distress.
Count Nine is directed to the Defendant Church Homes and sounds in negligent infliction of emotional distress.
On April 10, 2002, the Defendants filed a Motion for Summary Judgment.
Before addressing the merits of Defendants' motion, a brief review of the standards for the granting of a Motion for Summary Judgment is necessary:
 "Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . .
"A material fact is a fact that will make a difference in the outcome of the case. . . . Once the moving CT Page 14238 party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court. . . ." (Citations omitted; internal quotation marks omitted.) Yancey v. Connecticut Life Casualty Ins. Co., 68 Conn. App. 556, 558-59, 791 A.2d 719 (2002).
Christian v. Gouldin, 72 Conn. App. 14, 18 (2002).
Section 17-45 of the Connecticut Practice Book concerns the proceedings for motions for summary judgment. It provides that:
 A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the judicial authority otherwise directs. The adverse party [prior to the day the case is set down for short calendar] shall at least five days before the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file, shall be filed and served as are pleadings.
The relevant undisputed facts in this matter are as follows:
 1. The Plaintiff owns and operates a business entity called "Emerald Green Farm Garden, LLC/Emerald Green Landscaping LLC (hereinafter "Emerald Green." Emerald Green provided landscaping services to the Defendant Church Homes at its Meriden site.
2. In December 1999, Church Homes Operated Miller Memorial in Meriden Connecticut. During this period CT Page 14239 of time certain unionized employees were on strike and picketing outside of Miller Memorial's driveway.
 3. In December 1999, Scott Palmer was an employee of Emerald Green.
 4. On December 9, 1999 the Plaintiff posted bail for Scott Palmer, who had been arrested and charged with several counts, including intimidation based upon bias or bigotry, for threatening an African-American striker outside of Miller Memorial.
 5. Upon his arrest various Ku Klux Klan and white supremacist materials were found in Mr. Palmer's vehicle.
 6. Approximately one week after the arrest, Church Homes informed Emerald Green that it would no longer be using its services.
 7. Shortly after notifying Emerald Green about the termination of services, the Defendant Harper, made the following statement to the media:
 "We deeply regret that this incident occurred . . . We apologize to our unionized employees and to the community in general. The Klan and its supporters are repugnant to me personally, to members of the Board, and to this corporation. Klan members and sympathizers have no place whatsoever at any of our facilities."
 As to Count One
Count One of the Plaintiffs complaint sounds in breach of an oral and implied contract. The Defendants assert in their Motion for Summary Judgment that Plaintiff does not have standing to prosecute this cause of action.
Our case law is clear that standing implicates the court's subject matter jurisdiction:
. . . "Where a Plaintiff lacks standing to sue, the court is without subject matter jurisdiction." CT Page 14240 Steeneck v. University of Bridgeport, 235 Conn. 572, 580, 668 A.2d 688 (1995). "[O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) Salmon v. Dept. of Public Health Addiction Services, 58 Conn. App. 642, 649, 754 A.2d 828, cert. granted on other grounds, 254 Conn. 926, 761 A.2d 754 (2000).
Ardito v. Olinger, 65 Conn. App. 295, 300 (2001).
 It is axiomatic that if the court lacks subject matter jurisdiction, it is without power to hear the matter before it. Therefore, the court must determine the jurisdictional issue "before it can move one further step in the cause; as any movement is necessarily the exercise of jurisdiction." (Internal quotation marks omitted.) Blakeney v. Commissioner of Correction, 47 Conn. App. 568, 572,
 Pinchbeck v. Dept. of Public Health, 65 Conn. App. 201, 207 (2001).
Whereas the Defendants have raised the issue of standing, and standing implicates jurisdiction, the Court must address this issue before it can proceed to consider anything else in this matter.
Although the Defendants have raised this issue in a Motion for Summary Judgment, instead of a Motion to Dismiss, this Court will address this issue none the less because it does implicate the Court's jurisdiction.
 The question of standing may be raised by any of the parties, or by the court, sua sponte, at any time during judicial proceedings. In re Michelle G., 52 Conn. App. 187, 190, 727 A.2d 226 (1999), and cases therein cited.
 Grabowski v. City of Bristol, 64 Conn. App. 448, 450 (2001).
It is the position of the Defendants that the parties to the subject contract, were the Defendant Church Homes, Inc., and Emerald Green Farm Garden, LLC/Emerald Green Landscaping LLC. CT Page 14241
In support of their Motion for Summary Judgment, the Defendants, among other materials, submitted a copy of the May 3, 2000 deposition of the Plaintiff. This deposition provides in pertinent part as follows:
 Q. Is it your testimony that with respect to the contract with Church Homes that you personally entered into a contract, and not Emerald Green LLC?
 A. No, I signed the contract as agent for Emerald Green Farm or Emerald Garden LLC.
 Q. The party responsible for performing that contract was the corporation?
A. Yes.
(See Deposition at Page 50.)
 Q. I want to make sure I get your testimony right. Is it your testimony today that the contract with Church Homes or Miller Memorial, whatever it might be, was a contract entered into by Emerald Green Farm and Garden LLC?
A. Yes it was.
 Q. So paragraph 4 [of Count One of Plaintiffs Complaint] is not accurate in the sense that it was not you personally?
A. No, you're correct.
The Plaintiff clearly states that the contract that is the subject of Count One was between the LLC entities and the Defendant Church Homes, not the Plaintiff himself.
In his Memorandum in Support of the Objection to Motion for Summary Judgement, the Plaintiff states that:
The evidence is sufficient to permit a jury to find, alternatively, that the implied contract was between the Plaintiff and the Defendant Corporation or between the Defendant Corporation and the Plaintiffs LLC. In that respect, the Plaintiff has filed a motion to add the LLCs as additional Plaintiffs pursuant to CT Page 14242 Practice Book § 9-20 and Conn. Gen. Stat. § 52-109. Such a motion is proper at this time and should be granted. Finally, the evidence also is sufficient to permit a jury to conclude, alternatively, that the Plaintiff is a third-party beneficiary to the contract with the LLCs and, as such, has properly brought the instant suit.
The Plaintiff appears to argue that this Court should disregard the corporate entities that he created and permit him to file this cause of action against the Defendant's directly instead of proceeding through the corporate entities. However, the state legislature has given limited liability companies the right to sue and be sued.[1]
The limited liability corporations created by the plaintiff are legal entities with separate right and powers conferred and duties and liabilities imposed by law. Bator v. United Sausage Co., 138 Conn. 18, 22
(1951).
 Under certain circumstances, the corporate entity may be disregarded, but the claims of proof do not warrant such action in this case. Hoffman Wall Paper Co. v. Hartford, 114 Conn. 531, 534, 159 A. 346. The entity will not be ignored where those in control have deliberately adopted the corporate form in order to secure its advantages. Schenley Distillers Corporation v. United States, 326 U.S. 432, 437, 66 S.Ct. 247, 90 L.Ed. 181.
 Doe v. Saracyn Corporation, 138 Conn. 69, 78 (1951).
This Court takes judicial notice that on July 8, 2002, a coordinate Judge of the Superior Court denied the Plaintiffs Motion Number 114, Motion to Add Plaintiffs. Therefore neither Emerald Green Farm and Garden LLC nor Emerald Green Landscaping LLC are parties to this action.
The Plaintiff asserts that the evidence in this matter is sufficient to support a finding that he is a third party beneficiary to the contract with the LLCs. In order to address this assertion an examination of the allegations of the Complaint is necessary.
Courts are bound by the allegations made within the four corners of a Plaintiffs Complaint:
Because we are bound by the four corners of the CT Page 14243 plaintiffs complaint, we must examine the specific language to determine the particular causes of action alleged.
Sampiere v. Zaretsky, 26 Conn. App. 490, 494 (1992).
 It is a common rule of pleading that "[t]he allegations of a complaint limit the issues to be decided on the trial of a case and are calculated to prevent surprise to opposing parties." Bushnell Plaza Development Corporation v. Fazzano, supra, 687, quoting Nash Engineering Co. v. Norwalk, 137 Conn. 235, 239, 75 A.2d 496 (1950).
 New Haven v. Mason, 17 Conn. App. 92, 94 (1988).
This Court has examined the Complaint in this matter and although it has performed said examination construing the information in the Plaintiffs best light, it does not find any allegations concerning an action being brought as a third party beneficiary. Whereas the Plaintiff has not pleaded such a cause of action, he cannot recover pursuant to said cause of action.
This Court finds that the Plaintiff does not have standing to bring an action sounding in breach of the subject contract. This Court therefore does not have subject matter jurisdiction over this particular claim and it is ordered dismissed.[2]
 As to Count Two
Count Two alleges that the Defendant Harper defamed the Plaintiff by falsely and maliciously stating or implying to third persons that the Plaintiff was a supporter of the Ku Klux Klan.
Defamation is comprised of the torts of libel and slander. Defamation is "that which tends to injure `reputation' in the popular sense; to diminish the esteem, respect, goodwill or confidence in which the plaintiff is held, or to excite adverse, derogatory, or unpleasant feelings or opinions against him." W. Prosser W. Keeton, Torts (5th Ed. 1984), p. 773. Slander is oral defamation. This court has delineated specific categories of speech deemed actionable per se where "the defamatory meaning of [the speech] is apparent on the face of the CT Page 14244 statement. . . ." Battista v. United Illuminating Co., 10 Conn. App. 486, 491-92, 523 A.2d 1356, cert. denied, 204 Conn. 802, 803, 525 A.2d 1352 (1987). It is a well established principle that an accusation of theft is slander per se. See Ventresca v. Kissner, 105 Conn. 533, 537, 136 A. 90 (1927).
 "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiffs reputation. He is required neither to plead nor to prove it. . . . The individual plaintiff is entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the [defamation] caused him." (Internal quotation marks omitted.) Lyons v. Nichols, 63 Conn. App. 761, 768
(2001).
 Devito v. Schwartz, 66 Conn. App. 228, 234 (2001).
The Plaintiff alleges that the Defendant Harper defamed him on or about December 13, 1999 when he:
 . . . [F]alsely and maliciously stated or implied to third persons, including Donna Porstner, a reporter for the Meriden Record-Journal, a newspaper of general circulation published in the City of Meriden, that the plaintiff was a supporter of the Ku Klux Klan . . . As a result the Meriden Record Journal published the said accusation on the front page of its newspaper on December 14, 1999.
The newspaper article in question provides in pertinent part that:
 . . . Church Homes, Inc. of Hartford fired Emerald Green Farm and Gardens in Wallingford in part because its owner Ken Kogut, posted a $50,000, bond to release Scott Palmer, a KKK member, nursing home officials said . . .
"We deeply regret that this incident occurred." Church Homes President Norman B. Harper said in a prepared statement. "We apologize to our unionized employees and to the community in general. The Klan and its supporters are repugnant to me personally, to CT Page 14245 members of the board and to this corporation, Klan members and sympathizers have no place whatsoever at any of our facilities." (See Defendant's Exhibit "H".)
The Defendants assert that the statements attributable to them in the December 14, 1999 article were true and therefore they have an absolute defense to the Plaintiffs claim of defamation.
 In a civil action for libel, where the protected interest is personal reputation, the rule in Connecticut is that the truth of an allegedly libelous statement of fact provides an absolute defense.fn6 Dacey v. Connecticut Bar Assn., 170 Conn. 520, 538, 368 A.2d 125 (1976), citing Cox Broadcasting Corporation v. Cohn, 420 U.S. 469, 489-90, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). Contrary to the common law rule that required the defendant to establish the literal truth of the precise statement made, the modern rule is that only substantial truth need be Shown to constitute the justification. Johnson v. Whipple, 117 Conn. 599, 601-602, 169 A. 619 (1933); Stow v. Converse, 4 Conn. 17, 33 (1821). "It is not necessary for the defendant to prove the truth of every word of the libel. If he succeeds in proving that `the main charge, or gist, of the libel' is true, he need not justify statements or comments which do not add to the sting of the charge or introduce any matter by itself actionable." (Footnote omitted.) Gatley, Libel and Slander (2d Ed.) p. 178; see Eldredge, The Law of Defamation (1978) 71; Orr v. Argus-Press Co., 586 F.2d 1108, 1112 (6th Cir. 1978). The issue is whether the libel, as published, would have a different effect on the reader than the pleaded truth would have produced. Griffin v. Clemow, 28 Conn. Sup. 109, 111, 251 A.2d 415 (1968), citing Fleckenstein v. Friedman, 266 N.Y. 19, 23, 193 N.E. 537
(1934).
 Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 112
(1982).
The Defendants assert that:
[T]here is no dispute that Palmer was active in the CT Page 14246 Ku Klux Klan and served as the local "Great Titan." Second, there is no dispute that Kogut's act of posting bail for Palmer was a demonstration of support for Palmer. Third, there is no evidence that the Ku Klux Klan is not repugnant to Harper, the Board of Church Homes or Church Homes, Inc. Accordingly, no reasonable jury could find that Harper's statement on behalf of Church Homes was false.
The problem with the logic used by the Defendants is that it is based on the premise that the Plaintiffs act of posting bail for Mr. Palmer isipso facto support of the Ku Klux Klan. However, this Court does not see this as an established fact but as a genuine issue of material fact that must ultimately be decided by the jury. Whereas there is a genuine issue of material fact as to truthfulness of the statement, the Defendant's Motion for Summary Judgment as to Count Two must be denied.
 As to Count Three
Count Three of the Plaintiffs Complaint incorporates Count Two and is directed at the Defendant, Church Homes. Any liability on the behalf of Church Holmes is predicated to the liability of the Defendant Harper in Count Two. Whereas this Court has determined that there are issues of material fact remaining as to Count Two, the Motion for Summary Judgment must be denied as to this Count also.
 As to Counts Four and Five
Count Four of the Plaintiffs Complaint is directed to the Defendant Harper and sounds in false light invasion of privacy. Count Five is directed to Church Homes and also sounds in false light invasion of privacy.
A number of state and federal courts have applied the Restatement rule that a false light invasion of privacy occurs if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." 3 Restatement (Second), Torts 652E. This form of invasion of privacy protects one's interest in not being placed before the public in an objectionable false light or false position, "or in other words, otherwise than as he is." 3 Restatement CT Page 14247 (Second), Torts 652E, comment b. The essence of a false light privacy claim is that the matter published concerning the plaintiff (1) is not true; ibid; and (2) is such a "major misrepresentation of his character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." Id., comment c. (Internal citations omitted.)
 Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 131
(1982).
The Defendants assert that the Defendant Harper did not make a false statement and therefore they cannot be held liable for in action sounding in false light. The Defendants assert that "there is no dispute that Palmer was affiliated with the Ku Klux Klan and that Kogut's posting of Palmer's bond could be seen as a sign of support for Palmer", however the Defendants make an assumption that the bailing out of Palmer is tacit support of the Ku Klux Klan by the Plaintiff.[3]
The Defendants further assert that the Defendant Harper did not act recklessly in making the subject statements. He "merely responded to Kogut's public act of posting bail for Palmer." (See Defendant's Memorandum at page 15.) However the Plaintiff alleges in his Complaint that the way that the Defendants responded to the Plaintiffs act of posting bail for Palmer by "falsely and maliciously" stating or implying "to third persons, including Donna Porstner, a reporter for the Meriden Record-Journal, a newspaper of general circulation published in the City or Meriden, that the Plaintiff was a supporter of the Ku Klux Klan" was the reckless act. It is a genuine issue of material fact as to whether the Defendant's response implied that the Plaintiff was a supporter of the Ku Klux Klan and whether it was false, malicious and reckless under the circumstances.
 As to Counts Six and Seven
Count Six of the Complaint is directed at the Defendant Harper and sounds in the intentional or reckless infliction of emotional distress. Count Seven is directed at Church Homes and sounds also sounds in the intentional or reckless infliction of emotional distress.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor CT Page 14248 intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiffs distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. . . . Only where reasonable minds disagree does it become an issue for the jury. . . .
 "Liability for intentional infliction of emotional distress requires conduct that exceeds `all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous! . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." (Citations omitted; internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 210-11, 757 A.2d 1059 (2000).
 Bombalicki v. Pastore, 71 Conn. App. 835, 839 (2002).
The Defendants assert that they did not act in an extreme and outrageous manner.
In this case, Church Homes severed its business relationship with Emerald Green after the owner publicly posted bail for an employee who had connections with the Ku Klux Klan and who was arrested for threatening one of Church Homes' employees. In severing its relationship. Church Homes made a statement that the Klan and its members are repugnant to it. CT Page 14249
See Defendant's Memorandum in Support of Motion for Summary Judgment at p 18.
The December 14, 1999 newspaper article actually provided in pertinent part that:
 . . . The Klan and its supporters are repugnant to me personally, to members of the Board, and to this corporation. Klan members and sympathizers have no place whatsoever at any of our facilities."
Viewing the evidence in a light most favorable to the Plaintiff, this Court comes to the conclusion that there is a genuine issue of material fact as to whether the Plaintiff was a sympathizer of the Ku Klux Klan and that the alleged statements constitute extreme and outrageous conduct.
 As to Counts Eight and Nine
Count Eight sounds in the negligent infliction of emotional distress and is directed to the Defendant Harper. Count Nine also sounds in the negligent infliction of emotional distress and is directed to the Defendant Church Homes.
 The elements of negligent and intentional infliction of emotional distress differ as to the state of mind of the actor and not to the conduct claimed to be extreme and outrageous.
 Muniz v. Kravis, 59 Conn. App. 704, 709 (2000).
 . . . [I]n order to prevail on a claim of negligent infliction of emotional distress, the plaintiff must prove that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." . . . We repeatedly have endorsed this requirement of foreseeability.
 Scanlon v. Connecticut Light Power Co., 258 Conn. 436, 446
(2001).
There is a genuine issue of material fact as to whether the Defendant CT Page 14250 Harper should have realized that his conduct involved an unreasonable risk of causing the Plaintiff emotional distress and that such distress might result in illness or bodily harm.
 Conclusion
The Plaintiff in the instant action lacks standing to prosecute a cause of action sounding in breach of contract against the defendant and therefore Count One is dismissed.
As to the remaining Counts, the moving party has not met its burden of proof to show that there are no genuine issues of material fact remaining as to said Counts. The Motion for Summary Judgment as to Counts Two, Three, Four, Five, Six, Seven, Eight and Nine is denied.
 ___________________ Richard A. Robinson, J November 5, 2002